IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL AIR TRAFFIC CONTROLLERS ASSOCIATION, AFL-CIO ("NATCA") 1325 Massachusetts Ave., NW Washington, DC 20005 | ) ) ) ) ) ) | CASE: 1:19-cv-00062 LEON, RICHARD J. Judge ~~Cooper, Christopher R.~~ |
| AMANDA FUCHS, KEVIN BIANCHI, JONATHAN BARNETT, and JOHN GARNER, Plaintiffs, | ) ) ) | Description: TRO/PI (D-DECK) |
| v. | ) ) ) ) | [stamp: RICHARD ... JAN 17 2019 Angela D. ..., Clerk of Court U.S. District Court, District of Columbia] |
| THE UNITED STATES, et al | ) | |

PLAINTIFF-INTERVENOR TRACY JENSON (one of 165 similarly situated Air Traffic Controllers)        MOTION TO INTERVENE

Request the court notify the National Air Traffic Controllers' Association that the above named lawsuit is ON HOLD (suspended) until such time as NATCA makes a new agreement with the Federal Aviation Administration as described herein.

Tracy Jenson
P.O. Box 35
Spirit Lake, Id  83869

I, Tracy Jenson, respectfully move pursuant to Federal Rule of Civil Procedure 24 to intervene as a plaintiff in this action.  Intervention is warranted as of right

/

because the plaintiff in this case, the National Air Traffic Controllers' Association, is representing all OTHER Air Traffic Controllers EXCEPT is REFUSING to represent 165 Air Traffic Controllers who have had our RIGHT to EQUAL treatment violated in ALL THREE YEARS of the 3-year distribution of $200 million in pay raises among Air Traffic Controllers, depriving us of the correct pay raises to BASE pay as a RESULT OF DELAYING our moves to higher-level FAA facilities by 14 months because of the 14-month delay in contracting out our control towers at small airports (finally replaced by contract controllers at our "Level One" control towers), where the Union President (Paul Rinaldi) has been informed by fax and voicemail to his office that I have discovered by Freedom of Information Act request that if we had moved AS SCHEDULED to our higher-level facilities we would have been given higher-percentage raises to BASE pay in ALL THREE YEARS of the 3-year distribution of the $200 million (not to mention would have been given a 7% promotion raise if we had moved as scheduled, but did NOT get that raise), which would have been identical pay raises as other identical employees who had already moved to that SAME facility in the first three years of the contracting-out program (they moved to the higher-level facilities BEFORE the 3-year distribution of the $200 million began), where only us 165 in the FOURTH year of the contracting-out program were delayed in moving by 14 months, finally arriving at the higher-level FAA facilities TWO WEEKS AFTER the second-year-of-the-distribution raises were determined (did they delay us by an additional TWO WEEKS so they could get away with NOT giving us a second-year-of-the-distribution raise, only the STANDARD promotion raise?), which paying us as if we had moved AS SCHEDULED, considering higher-percentage raises to BASE pay only (not getting higher LOCALITY pay until actual arrival, obviously), would not have cost the FAA any additional money, it would have only changed the distribution of

2

the $200 million, only affecting the other 14,977 controllers in the country at the time (which includes the approximately 700 who were in the first three years of the contracting-out program) by, on average, $2.96 per paycheck after the third year of the distribution, depriving them of 3 or 4 candy bars every two weeks, and PREVENTING their ILLEGAL overpayments. The distribution of the $200 million established continuing pay levels (pay did not go back down after the distribution was complete), therefore, the ILLEGAL overpayments made to the other 14,977 controllers has been continuous for 20 years and 3 months, or until retirement, with overpayments totaling approximately $26 million. If not for retirements during that time (approximately 11,800), the overpayments would have totaled approximately $31 million. There is no statute of limitation for the recovery of overpayments made to Federal employees (5514, Title 5, U.S.C.). In January, 2013, President Obama signed into LAW the "Improper Payments Elimination and Recovery Improvement Act of 2012" (IPERIA), which makes it MANDATORY to recover overpayments made to Federal employees, defining overpayments to Federal employees as "Improper Payments", as confirmed by OMB circular A-123, Appendix C, "Management's Responsibility for Internal Control", and Mark Reger at the Office of Federal Financial Management at the Office of Management and Budget at the White House ((202) 395-3993) verified that the IPERIA law REQUIRES the recovery of overpayments made to Federal employees. However, most of the 165 cheated controllers were only cheated on a temporary basis, during the delay in contracting out, then the entire time at a medium-level facility (if they were a high step of an FG(GS)-10 at the Level One control tower), or during training at a high-level facility, such as Chicago O'Hare, if they went immediately from the Level One control tower to the high-level facility, as FAA management gave us our 1st, 2nd, or 3rd choice of any facility in the country, until

either retiring (but many are now being cheated out of the correct amount of retirement income, which does not come from FAA money) or LATER becoming fully qualified at a high-level facility, at which time pay was brought up to the same level it would have been put at if we had moved on time (only at the high-level facilities), and are owed less than $7 million, which includes interest and the money to pay the 3 who are known to have resigned due to being cheated out of the correct level of pay at the new facility (our former Facility Managers and former coworkers can testify as to WHY we resigned), which resignations were "constructive discharge", same as wrongful termination, as if we have worked at the correct level of pay since resignation, with re-establishment of ALL FAA qualifications, licenses, and ratings held at the time of resignation, and establishment of retirement eligibility, putting any money withdrawn from the OPM retirement fund back into the fund, plus interest, and putting 7% of back pay into the retirement fund, plus interest.

Therefore, RE-DETERMINING the distribution of the $200 million by paying the 165 delayed controllers AS IF we moved AS SCHEDULED to the higher-level FAA facilities, considering higher-percentage raises to BASE pay only, would result in a GAIN to the Federal Aviation Administration of approximately $19 million during the next ten months, recovering the $26 million with deductions from the pay and/or retirement income of the 14,977 who partook of the $200 million distribution and paying out less than $7 million of that recovered money to the 165 cheated controllers. In the beginning, cheating 1% of controllers and overpaying the other 99% was an "even-steven" situation for the FAA, however, during the last 20 years and 3 months the total overpayments to the 99% have exceeded the total amount owed to the 1% by approximately $19 million. A gain to the Federal Aviation Administration of $19 million is enough to hire an

additional approximately 400 Air Traffic Controllers, to increase the flight safety of the public and help reduce future overtime payments. This is NOT the same issue that ten Air Traffic Controllers took to the Court of Federal Claims in "Brodowy v. U.S.", which only concerned the SECONDARY violation, how pay was set AFTER arrival at the higher-level facilities, therefore, the FIASCO can be corrected without being contrary to the Court of Federal Claims ruling. The first year and second year of the distribution of the $200 million occurred DURING our extra 14 months at the Level One control towers. If we had been given the correct raises to base pay DURING the delay in contracting out, same as if we had moved on time, so we are not financially VICTIMIZED by the Union and FAA's legal battle in the Cleveland Federal court over contracting out our control towers (which FAA management has admitted in a letter to two Senator's offices, in response to their inquiry, that the Union's (representing us controllers) whistleblower disclosure of FAA wrongdoing to the Cleveland Federal court (therefore, all controllers became whistleblowers, the Union acting as our attorney), that the FAA was illegally conducting the program to contract out the control towers at small airports without complying with an OMB regulation to do a cost comparison first, and the Judge agreed and ordered the FAA to do the cost comparison "prior to contracting out the remaining 22 Level One control towers", is WHY we were delayed in our promotion by 14 months), it would have automatically set our pay at the correct level upon arrival at the higher-level facilities, where we would get NO raise to base pay in the actual move, because base pay would already be set at the correct level BEFORE LEAVING the Level One control towers, only getting higher locality pay upon arrival (as the case may be). The deductions from the pay of any who are still working would only be $81 per paycheck for ONE YEAR, and they are now averaging over $100,000 per year, and

any retiree would only be affected by a MAXIMUM of $176 per MONTH for the one year, if he or she JUST retired, say, last month. They have to be given at least a 30-day notice before deductions begin (5514, Title 5, U.S.C.). Therefore, FAA management can borrow money from the Dept. of the Treasury "Judgement Fund" to pay the 165 the total amount owed, then the FAA would gain the $19 million during the next ten months (the first nine months of the recovery, beginning after the 30-day notification period), then would use the last 3 months of the recovery to pay back the Judgement Fund. It is a simple matter of using the OPM webpage for "Back pay and Interest" to calculate how much each of the 165 is owed, where it is useable right on the OPM website (no need to download a program), where the money actually paid is inserted into one column on a per-paycheck basis, and the money that should have been paid is inserted into the other column on a per-paycheck basis, and the program prints out how much the employee is owed, both with and without interest. Then, take the total amount that the 165 were cheated out of as a group after each of the 3 years of the distribution, and divide that number by the other 14,977 controllers, to find out how much they were overpaid, on average, and the result will be plus or minus 5% of the numbers given above.

Due to subsequent promotion raises and cost-of-living increases during the last 20 years and 3 months (since October, 1998, the first year of the distribution), the overpayments to the 14,977 have averaged $4.00 per paycheck, and are now right around $5.60 per paycheck. Therefore, an additional REDUCTION to their current base pay of 7 cents per hour is justified (.07 X 80 hours = $5.60). $4.00 X 26 pay periods X 14,977 controllers X 20.3 years = $31,619,442 "would have been" total overpayments, however, reduced to only approximately $26 million due to retirements. $4.00 X 26 pay periods X 20.3 years = $2,111 in total

overpayments, on average, to any who are still working or recently retired. For the ONE-YEAR recovery, $2,111 divided by 26 pay periods = $81 per paycheck, or $2,111 divided by 12 months = $176 per MONTH for a recent retirement. These deduction amounts do not include a factor for inflation. According to three inflation calculators available on the internet, the total inflation for the last 20 years and 3 months was 48%. If a factor for inflation is applied, the FAA would GAIN approximately $25 million during the next ten months, instead recovering approximately $32 million and still paying out less than $7 million, which is enough to hire an additional approximately 533 Air Traffic Controllers. Since the inflation factor can be applied to the original overpayments, but not to the current overpayments, the median factor of 24% would be used. Multiply the above deduction amounts by 1.24. Even with a factor for inflation, the deduction amounts are still well below the maximum deduction of 15% of disposable income allowed by 5514, Title 5, U.S.C. If a controller retired soon after the 3-year distribution of the $200 million began, he or she would only owe a small amount, but the inflation factor would be at, or near, the full 48%. If he or she retired more recently, the amount owed would be at, or near, the full $2,111, but the inflation factor would be at, or near, the minimum of 24%. Two straight-line graphs or a computer program can be used to determine the amount actually owed to the FAA by each individual employee or retiree. If a controller retired some time ago, the amount owed to the FAA would be determined by overpayments of $1.90 per paycheck after the first year of the distribution, then overpayments of $2.40 per paycheck after the second year of the distribution, then overpayments of $2.96 per paycheck after the third year of the distribution, then gradually increasing after that up to the current overpayments of $5.60 per paycheck, obviously ending upon retirement. If a controller retires BEFORE the

one-year recovery is complete, then give him or her the option of taking the remaining amount owed out of the final paycheck, or continue deductions from retirement income (5514, Title 5, U.S.C.).

The last three Union Presidents of NATCA, including the current Union President, Paul Rinaldi, have REFUSED to represent the 165 delayed controllers due to TRIPLE "conflict of interest" for their own substantial financial gain, as they are aware that if the situation is corrected even THEY will have to pay back their own overpayments they gained as Air Traffic Controllers BEFORE becoming Union President, and if any of the still-working controllers have to pay back their overpayments and they find out the Union President TRIGGERED IT, he will probably not be re-elected, or might even be impeached, and they have made over $300,000 per year PLUS benefits, without having to work traffic, and when they go back to being an Air Traffic Controller would get a smaller paycheck, as when a Union President goes back to being a controller his or her pay is set as if he or she never left being a controller and was never Union President.

The 165 have the right to be paid the back pay they were cheated out of years ago before any currently-working controller is paid, as a result of the Union's current lawsuit.

THEREFORE, respectfully request that the court informs the National Air Traffic Controllers' Association that the current NATCA lawsuit to obtain pay for currently-working controllers be put ON HOLD (suspended) until such time that the Union President makes a new agreement with the Federal Aviation Administration to RE-DETERMINE the distribution of the $200 million in pay raises among Air Traffic Controllers by paying the 165 delayed controllers AS IF we moved AS SCHEDULED to the higher-level FAA facilities, considering raises to BASE pay only, not getting higher locality pay until actual arrival (obviously), and

consider that any who resigned BECAUSE OF being cheated out of the correct level of pay have worked at the correct level of pay since resignation, which includes Doug Clayton, now residing in Grand Junction, Colorado; Andy Plamondon, now residing in Spokane, Washington; and myself, Tracy Jenson, residing in Spirit Lake, Idaho. There may be others I am not aware of.

The six-year statute of limitation for Federal back pay does not apply in this situation, because it only applies when it will cost the government money to pay employees their back pay, to limit the financial "hit" to the government. The FAA and OPM would only be acting as "collection and re-distribution" agencies, which FAA management has the obligation to the 165 cheated controllers to do, because it was an UNQUALIFIED Head of the Air Traffic Division (Ron Morgan, now retired) who, being only an ex-Air Traffic Controller, not a Human Resources Specialist, was not aware of the requirement under the circumstances, CAUSED the INCORRECT distribution of the $200 million. When I recently asked Mr. Morgan, "Why didn't you give us the same raises as the controllers at the facilities we were supposed to be at?", he replied, "I didn't think of that". Having the Head of the Air Traffic Division handle the distribution of the $200 million is like having Human Resources handle the operation of the control towers, which they would be unqualified to do, and the same is true visa-versa. The left hand was doing the job the right hand should have been doing, and the right hand didn't know what the left hand was doing.

I have included a flow chart, which is correct for the Boeing Field FAA control tower in Seattle, and is an example facility for the other facilities around the country that the 165 finally moved up to, and is confirmed by the included SF-50 comparison, with Christine Hawley moving to the Boeing Field FAA control tower in the THIRD year of the contracting-out program, and I moving to that SAME

control tower in the DELAYED fourth year of the contracting-out program, and we were both FG(GS)-10, step 10s, at the same level of pay at the Level One control towers before they were contracted out, and when I finally worked with her at the Boeing Field control tower she was being paid $15,000 per year MORE than me, and I worked there for 3.5 years at the wrong level of pay, pursuing every possible avenue of correction, only to be given a FALSE excuse by the Federal Labor Relations Authority and the subsequent Union President's (John Carr) refusal to represent, being cheated worse as time went on as subsequent pay raises were a percentage of an already-erroneously-established pay level, finally being cheated out of over $20,000 per year at the time of resignation. Once again, request the court notify the Union that their lawsuit is ON HOLD until such time that the Union makes a new agreement to RE-DETERMINE the distribution of the $200 million in pay raises as described.

Respectfully submitted,

*Tracy A. Jenson*

(208) 623-3430 Pacific
pilotdude2@hotmail.com

Mr. Tracy A. Jenson
P.O. Box 35
Spirit Lake, Id  83869

## CERTIFICATE OF SERVICE

I certify that I have sent a copy of this MOTION TO INTERVENE and related documents to the below named individuals by certified mail.

Paul Rinaldi, Union President of the National Air Traffic Controllers' Association
NATCA
1325 Massachusetts Ave., NW
Washington D.C. 20005

UNITED STATES ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
Attn: Civil Process Clerk
United States Attorney's Office
555 Fourth Street, N.W.
Washington D.C. 20530

UNITED STATES ATTORNEY GENERAL
Tenth and Pennsylvania Avenues, N.W.
Washington, D.C. 20530

Mark Robbins, Acting Counsel of the UNITED STATES OFFICE OF PERSONNEL MANAGEMENT
United States Office of Personnel Management
1900 E Street, NW
Washington, D.C. 20415-1000



